All right, our final case for argument is 25-1071, Titanium, LLC v. ZSPEC Design. Mr. Connors, please proceed whenever you're ready. Good afternoon, Your Honors. It's a pleasure to be here today. I'm Andrew Connors on behalf of Titanium, LLC. The USPTO is charged with maintaining a trademark registry to decide or give notice to the public as to who has ownership and who does not. Part of that charge from the Lanham Act is to direct the public and reconcile conflicts between claims of ownership. Here it failed. I think the case really just boils down to whether you waived the likelihood of confusion argument because if there's two things you have to prove and you only establish one of them and argue one of them, then the board can find you waived the other and that's just the end of the day. So where can you demonstrate or what is your argument for how it is that you did not, in fact, waive your burden to establish likelihood of confusion? Well, Your Honor, I agree with you. It boils down to that. And I'd say there's two responses, two prime arguments. One, we mentioned likelihood of confusion insofar as the way it got here. Okay, so show me where you mentioned that so that I can ascertain whether that is an argument or just a sort of background passing? Yes. Kind of like it was sunny last week. Yes, Your Honor, I understand. And I understand exactly what you're saying, right? In our opening trial brief at the Trademark Trial Appeal Board, we said in the statement of facts, we had lengthy facts. Can you give us a page number? Well, yes, Your Honor. Excuse me just for a moment. Let me get the… In the appendix, Titanium's trial brief. Excuse me. In the statement of facts, we discuss on appendix 20, appendix 21. So effectively, the last paragraph of the statement of facts, we describe in detail the procedure that led us here, which is that we submitted two trademark applications. Those trademark applications were rejected on the basis of likelihood of confusion. I must be missing something. Me too. I'm on a… Appendix 21 is… I got a title. It's an answer to the petition. Excuse me, Your Honor. I'm sorry. Forgive me. I may be referencing an outdated appendix that I've printed. And so the best I can tell you is page 5 of our opening petitioners, excuse me, opening brief to the United States Patent and Trademark Office. That would be the end of our statement of facts. I'm sorry for the misnumbering. Maybe appendix 30 for us. Yes. Yes. I'm sorry. I've misprinted an old version of the… Is there anywhere in the argument section where you reference likelihood of confusion? I would agree we don't. I would agree we don't. Okay. So just so I get my record clear. Yes, Your Honor. The only place where you reference likelihood of confusion was this appendix page 30 in the facts section. Yes, Your Honor. That's true. Now, I think that's critical and why I'm trying to give the background of the court here. And this is a common experience, and we explain it right there is what we say is it's very common that you apply for a trademark. It gets rejected for a likelihood of confusion. You then suspend those trademark applications and do what we did here, which is seek a cancellation proceeding. And so we give that background to the office. And the office says, well, that's waived because we don't look at our own proceedings unless you attach that proceeding to the record. I think that itself is an unreasonable rule, which is nowhere. We don't even have to get to that, do we, if we find that you waived the argument by not actually making it in the argument section. So that whole attachment thing, it seems, might be a red herring. I disagree, Your Honor, because the whole purpose of the paragraph I'm describing is to tell the office the reason we're here is an action you took. In other words, the office doesn't want to recognize its own action. So if the office should have recognized its own action, the office should have said, yes, our examiners did, in fact, reject this on a basis of a likelihood of confusion. Well, but you could have a rejection on likelihood of confusion, and you could attempt to overcome that rejection, couldn't you, by arguing this priority point? Like, suppose that the office actually found there was a likelihood of confusion, then you would move to priority, right? Not if you're – I'm sorry to ask a question, Your Honor, but are you saying in the process of dealing with the examiner, you could argue priority with the examiner? No, I'm saying here to – in your – in titanium's trial brief, like it – why didn't it argue likelihood of confusion? Why didn't you say there is a likelihood of confusion? There's – I mean, there's like the DuPont test. There's all these different tests that, you know, you didn't cite any of that precedent. Like, you didn't articulate how you established likelihood of confusion. You didn't sort of weigh the factors for it. You didn't go through any of that analysis, and you have the burden of establishing that. Well, Your Honor, what I'm posing to the court, I don't disagree that that's – you're right, right, that there's precedent to establish that. But that precedent – what I really want to focus the court in on is this rule that says we won't recognize our own proceedings. We won't recognize what the left and right is doing in this case. I think that's critical. You didn't even make an argument that they should recognize what the left hand did. You just have a quick passing reference to likelihood of confusion. You might be on stronger ground if you had a couple sentences in the argument that said we don't have to say very much about likelihood of confusion because this very same office last week found likelihood of confusion. Now we'll move on to priority. But you have to admit you didn't even do that much, right? Well, Your Honor, if I cite to this court – I would agree. It's not in the argument section. I absolutely agree. But if I cite to this court this court's precedent, I don't say please take judicial notice of that fact. When you file this petition, which is included in the record, the petition we cite the actual registrations that are filed. We cite the basis – But don't you agree that for us to fault a board on not considering some argument that is not actually made, don't you feel like that's a pretty onerous standard for us to hold the board to? Well, no, Your Honor. The board said in its opinion it's not going to look – it acknowledged this section we're talking about and it said it wouldn't look at that because it wasn't attached. That's what it said. But in other words, it's saying it's not going to look at its own records. It's not going to look at its own records and its own proceedings. That's what it said. So I don't think it's that onerous. It's not onerous at all. It's not onerous on you either. I mean you started out when you got up here to tell us about how they have to maintain the whole registration system. There's lots of trademarks and applications and cancellation proceedings. It doesn't seem unreasonable to expect a petitioner for cancellation to at least include a couple sentences and attach what they want the board to look at. Well, yes, Your Honor, except insofar as likelihood of confusion is even an interesting standard that's really nearly inapplicable here insofar as we hear with a direct conflict. Same mark, same goods and services. That was what was posed to the board. And that was additionally posed to the board is that they already rejected it because it's an easy rejection to make. So those two things were posed. The thing the board was unwilling to do is to say, oh, yes, we did that. Bear in mind, the board at the same time said we acknowledge that they're standing based upon what you allege here, based upon you alleging this conflict, plus, except they were selective. They said we alleged in our petition that there were demand letters sent out attempting to stop our use of this trademark. And the board took full acceptance of that standing issue, right, even though there's no argument anywhere here about standing. There's no evidence submitted about standing. They just accepted that as true. They could have just as easily accepted as true the fact of their own records, right? And it's not that onerous, Your Honors, when you consider that I would agree. If we went back 30 years and now I'm making a demand that they comb through paper records, but literally all they have to do with their electronic system is click a button. That's it. So are you saying you made some argument that the board take judicial notice of its own documents? I'm not suggesting that I asked explicitly for judicial notice because I'm suggesting that you don't traditionally do that. I'm saying I told the board of its own action and why we're here today, right, or not here, but before them at that time, right? So I'm saying that was asked and put before them. The office was told of its own action, and it said it won't recognize that action because of this cumbersome nature of doing things. But it's not cumbersome. It's far from cumbersome. So you're really relying on this one sentence on appendix page 30 talking about titanium filed a trademark application with the USPTO, that sentence that has the words likely of confusion in the fact section to say that, therefore, this argument was squarely before the board? Yes, Your Honor. I would say more than that one sentence. I think what follows. What else you got? Well, there's a few sentences that follow describing the action that the office took, right? So we don't just say it says here. It says titanium filed a trademark application with the USPTO for the trademark and associated logo in September of the same year, received a non-final office action rejecting the application based upon a likelihood of confusion with registered mark. In support of this office action, and I'm just suggesting, Your Honor, it continues for about four or five, six lines there about what they did, right? And not just arbitrarily with reference to all the registration serial numbers by which this can be looked up readily, right? As I've said before, I readily acknowledge here, Your Honor. I wish I could go back and write a sentence in the argument like Judge Stark said. I get that. But that doesn't mean that the office still didn't act arbitrarily in this case or act unreasonably in this case. I think this particular rule we're referencing as applied to this particular circumstance. They're giving a petition that says we claim the exact same mark for the exact same goods and services, dress up bolts for decorative automotive fasteners. We claim we have a conflict because you told us we have a conflict. That's all stated in the petition and stated here again in what we've just been discussing. And as to that conflict, we ask that you resolve it in our favor because then the only thing reasonably in dispute that anybody's ever disputed is who came first in use in commerce. And in fact, I think what's also very significant is the office is readily acknowledging that it's not going to look at any of the documents that were provided because ostensibly it's all about priority. But priority, I would submit to the court, is not really a separate element. It's a rule of decision that's intertwined with the first. Meaning we're saying, okay, once we know there's a conflict, and we call that likelihood of confusion because there can be this expansive reach of some marks that go beyond that. But there's no question when it's the same mark and the same goods and services, right? You know, wish I had said that, readily acknowledge it. But I think we said enough here for this court to say simply take acknowledgement of your own actions in this case. That's an unreasonable rule as applied to this particular scenario. That's what we'd ask. Do you have your brief handy? On page 6 of your brief, tell me when you have it. Yes, Your Honor. Are you referring to my, the brief? Your blue brief right here before us. Yes. Yes, Your Honor. You say as an initial matter, it's false that Titanium did not mention or reference likelihood of confusion. And then you say that you explicitly did when you said the PTO denied for likelihood of confusion. That's the reference to page 5 or page 5 of your trial brief, right? That's what you're talking about there.  Yeah. And then you didn't give us a cite, so I just want to make sure. Then you say, moreover, Titanium's briefing repeatedly raised the issue of likelihood of confusion, although without that term, by repeatedly explaining the parties were fighting over the exact same mark as used in association with the exact same goods. See, do you see that? Like, one thing that's a little challenging for me in an appeal like this is you didn't give me any cites. Like, you didn't give me any cites for your claim that we raised the words likelihood of confusion one time, but, you know, you were able to point to them today. Can you walk me through, since you didn't in your brief give me any cites at all for where you supposedly repeatedly explained the parties were fighting over the exact same mark as used on the exact same goods? Can you show me some cites in your trial brief where you did that? I understand, Your Honor. And what I'd say is the entire trial— No, I want you to actually show me cites in your trial brief. Your Honor, I'll readily acknowledge that was an overzealous statement on my part. I didn't say likelihood of confusion. I did not. What I'm alluding to there— No, I want you—you said exact same mark in association with the exact same goods repeatedly. You said you repeatedly explained in your trial brief the same mark, same goods. So where is that in your trial brief? Your Honor, what I'm referencing there is the fact that we're discussing repeatedly the sales of those same goods. In other words, we're referencing—what I'm trying to describe there in my statement there is I'm trying to describe that the entire brief with taking into account the evidence it's referring to is evidence of screenshots of websites and goods, the same goods, nuts and bolts, stamped with the marked dress-up bolts. That's what I'm referring to. And I appreciate that may be an elegant, but that's what I was attempting to say in that statement is that in that context—and the office didn't look at any of that evidence. So is it correct then to say that nowhere in your trial brief did you actually assert that this— that these parties are fighting over the exact same mark as used with the exact same goods? Your Honor, I suppose we say the marked dress-up bolts repeatedly. I suppose we don't explicitly say the exact same goods. We say that in reference to the evidence that shows the exact same goods. All right. Let's save a little bit of time for rebuttal. Thank you, Your Honor. Let's hear from opposing counsel. Mr.—is it Wengrobski? Yes. Thank you, Your Honor. Please proceed. May it please the Court. The standard of review in this case is abuse of discretion. The Board did not abuse its discretion or act in an arbitrary or capricious way. It simply followed its own well-established rules that have been affirmed by this Court. As we saw, there is no dispute here that Titanium's trial brief contained no likelihood of confusion argument. The Board therefore applied TBMP 801 and reached the only conclusion that it could have reached, that Titanium waived the likelihood of confusion claim. The Board's opinion was very thorough. It was articulated. It had repeated citations to case law, including from this Court. It had repeated citations to the record as well. The Board acted well within its discretion. This Court has already issued rulings that are perfectly consistent with the Board's decision. If the Board had or if their brief had repeatedly said, this is for the exact same mark, verbatim, on the exact same goods, if their brief had sprinkled that throughout repeatedly, would that have sufficed even though the magic words likelihood of confusion weren't there? I mean, the likelihood of confusion analysis is largely driven by those two factors. The short answer is absolutely not because sprinkling is not nearly enough. In fact, when you read the line of cases regarding that issue, mostly from this Court, the magic word that keeps jumping off the page at me is the word developed. Okay, suppose that in their argument section they repeatedly say, in the argument section there's just no question that the same mark on the same goods, but they just don't use the words likelihood of confusion. Would that suffice? No, it would not even be close, actually, because the factors for likelihood of confusion analysis are many. Around here, it would be DuPont factors, which is a very lengthy list. Where I am in the Second Circuit, we use Polaroid factors, also a very large list. In no particular order, it's a lot more complicated than just the matchup of the mark and the goods because we tend to look at things like what is the price point of each company's product? What is the quality of each company's product? Has anyone ever been confused? Has the junior user acted in good faith or bad faith? There are many factors involved. Are you fundamentally arguing that you think the argument would have been undeveloped and that's why you don't think it would have been enough to be properly raised? Is that what your kind of response is to the question posed by Chief Judge Moore? Yes, they had no appropriate mention of it at all in the argument section, even if they had glossed over it with just the phrase likelihood of confusion. But you're not contending that it necessarily requires a use of magic words, likelihood of confusion, to preserve the argument? Typically, it would certainly have that in there, but it would be required to break down the DuPont factors used by the trademark office to analyze and determine whether or not there is a likelihood of confusion. The titanium did precisely none of that. I recognize you're not the petitioner and you make the common sense point that if there were problems with their brief, they can't make up for it with your brief. But nonetheless, it is striking to me that it doesn't seem like you made any of these arguments below. That is, I recognize you said on page 850 in your introduction that they have not proven likelihood of confusion, but you don't go on and make a they don't do DuPont factors, et cetera, et cetera. And I'm not suggesting you had to, but it is striking to me. It just seems like from an outsider's perspective that you all really understood that the only thing that truly was in dispute was priority because it was essentially the exact same mark on the exact same goods. Would it be wrong for me to conclude that in reality you all understood that? No. In fact, the board even noted that it had reviewed the full evidentiary and the full procedural record, and it concluded that CSPEC never conceded that there was a likelihood of confusion between the marks. We never conceded that. Had we received a detailed argument from titanium on that front, we absolutely would have countered every part of it or at least addressed every part of it. We weren't given that opportunity. Could you address the standing point? How is it that the board was able to find standing if there's nothing on likelihood of confusion? The board was able to find standing because as held by this court in a precedential opinion in 2000 in Cunningham versus Laser Golf, there the federal circuit reiterated that the party seeking cancellation must prove, one, standing, and two, of course, valid grounds for cancellation. Importantly, the court in Cunningham said that standing is the more liberal of those two elements. Why? Because it requires only that the parties seeking cancellation believe that it is likely to be damaged by the registration. And the federal circuit cited the prior holding of Golden Gate Salami Company versus Gulf States Paper, another precedential decision that said the same thing. In terms of, you know, pure logic, it makes no sense to say that if a party has standing and has automatically satisfied all trial requirements, trial being necessarily a separate exercise, and trial typically takes place a couple of years after a proceeding is initiated and standing is established. In fact, using titanium's logic, TBMP 801.01 would be completely superfluous. We, of course, presume that it is not. Is the standing based on the allegations in the petition? And did the petition do enough, at least, to allege likelihood of confusion? The petition did enough to meet that minimum threshold of standing at that time. Anything further? Yes. Really? Regarding titanium's argument that the likelihood of confusion was obvious or implied in its trial brief, obviously, it's not the board's job to read between the lines and assume what a party meant to argue. But it does not matter that likelihood of confusion was discussed in the original petition way back when, at the outset of the case, because the petition is not the trial brief. It also does not matter that the parties may have worked on the confusion issue during discovery because nothing in discovery is akin to a trial brief. It also does not matter that titanium had their own applications projected. You know, none of this came up in the argument. None of it. Okay. If no further questions, thank you, Your Honor. Your Honor, I recognize that very – thank you, Your Honor. I'll be brief and certainly field any questions you have. I think – I'm not trying to sit here and tell this court, oh, we made – we did the exact same – the exact things we should have done in this brief. I wish I had one sentence like Judge Stark described. I really do. Right? It makes sufficient sense here to say when we reference serial numbers and we say exactly what the office already did, like I said before, that the left and the right ought to know what they're doing. And they ought to know what they're doing in the context of a brief that is specifically showing documents that the board said they're not going to look at. Documents again and again. These documents that they refused to look at showed stamped nuts and bolts in bags and boxes with dress-up quotes written on them or on websites offered for sale. Counsel, do you agree that we review the board's application of its own rules for an abuse of discretion? I'm sorry, Your Honor. I didn't hear. I'm just asking about the standard review. Do you agree that we review the board's application of its own rules for an abuse of discretion? I would agree it's an abuse of discretion on its own rules. I think the standard review might be a little bit more muddled insofar as this isn't a rule that went through the Administrative Process Act and it's, you know, the statute's silent one way or the other. The statute just directs cancellations generally. There's a CFR regarding generally about having briefing. But point being is, yes, Your Honor, I think that's mostly true, but we can still examine whether the rule as applied here is arbitrary and capricious. And I think it is under these exact circumstances. And that's why I put the qualification on my answer. Unless there are any further questions, Your Honor, thank you for the time today to present this to you. I thank both counsel. This case is taken under submission.